**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| MELISSA DELLINGER, ) | |
| ) | No. 6:14-cv-1150-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that the court affirm Commissioner of Social Security Carolyn Colvin's decision denying claimant Melissa Dellinger's ("Dellinger") application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Dellinger filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I. BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A. Procedural History

Dellinger first filed an application for SSI and DIB on August 12, 2011, alleging that she had been disabled since December 3, 2003. The Social Security Administration ("the Agency") denied Dellinger's application both initially and on reconsideration. Dellinger requested a hearing before an administrative law judge ("ALJ"), and ALJ Gregory W. Wilson presided over a hearing held on September 13, 2013. In a decision issued on October 18, 2013, the ALJ determined that Dellinger was not disabled. Dellinger requested Appeals Council review of the ALJ's decision. This decision

became the final decision of the Commissioner when the Appeals Council denied further review on January 28, 2014.

On March 26, 2014, Dellinger filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on April 9, 2015, recommending that this court affirm the ALJ's decision. Dellinger filed objections to the R&R on May 12, 2015 and the Commissioner responded to Dellinger's objections on May 18, 2015. The matter is now ripe for the court's review.

### B.     Medical History

Because the parties are familiar with Dellinger's medical history, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Dellinger was thirty years old at the time of her alleged disability onset date. She has the equivalent of a high school education and past relevant work experience as a secretary.

### C.     ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R.

§ 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Dellinger was disabled from December 3, 2003 through the date of his decision, the ALJ employed the statutorily-required five-step sequential evaluation process. At step one, the ALJ found that Dellinger did not engage in substantial gainful activity during the period at issue. Tr. 11. At step two, the ALJ found that Dellinger suffered from the following severe impairments: chronic obstructive pulmonary disease/asthma, obesity, diabetes mellitus, peripheral neuropathy, superior labral tear from anterior to posterior of the left shoulder ("SLAP tear"), migraine headaches, anxiety, and depression. Id. At step three, the ALJ found that Dellinger's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 14. Before reaching the

fourth step, the ALJ determined that Dellinger retained the residual functional capacity ("RFC") to perform light work

> except for limitations in stooping, kneeling crouching, crawling, and climbing ladders and scaffolds, and ropes on more than an occasional basis, using her fingers for fine manipulation and handling objects more than frequently, frequently balance [sic] and needing to avoid concentrated exposure to fumes and hazards.

Tr. 18. The ALJ also determined that, "from a mental standpoint," Dellinger could only "carry out simple, one-to-two step tasks." Id. The ALJ found, at step four, that Dellinger was unable to perform any of her past relevant work. Tr. 28. Finally, at step five, the ALJ determined that considering Dellinger's age, education, work experience and RFC, she could perform jobs existing in significant numbers in the national economy, and therefore concluded that she was not disabled during the period at issue. Id.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of

4

evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

### III.   DISCUSSION

Dellinger objects to the R&R on the ground that the magistrate judge erred in finding that the ALJ properly discounted the opinions of two of her treating physicians, Dr. Carol Burnette ("Dr. Burnette") and Dr. James L. Bridgeman, Jr. ("Dr. Bridgeman"). Pl.'s Objections 1. Specifically, Dellinger argues that the magistrate judge erred in:  (1) finding that the ALJ properly afforded the opinions of the state agency consultants greater weight; (2) ignoring Dellinger's arguments that the ALJ improperly exercised an expertise that he did not possess; and (3) ignoring Dellinger's argument that the ALJ violated the Commissioner's rulings by affording Dr. Bridgeman's opinion no weight. Id. at 3, 8, 12, 13.  Dellinger also makes a number of other objections in which she essentially argues that the ALJ improperly weighed the evidence when evaluating the opinions of Dr. Bridgeman and Dr. Burnette. Id. at 3–12.

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  In such a

5

circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors:  (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion.  20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).  However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision."  Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion).  A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion."  Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

Here, both Dr. Bridgeman and Dr. Burnette opined that Dellinger was not able to work.  Specifically, Dr. Bridgeman responded to a questionnaire that, due to Dellinger's physical impairments, she was unable to lift as much as ten pounds occasionally, stand or

walk any amount of time without interruption, sit more than five minutes without interruption or, for more than one hour in an eight-hour workday, climb, balance, stoop, crouch, kneel or crawl.  Tr. 664–66.  He further found that Dellinger's mental impairments precluded her from having any useful ability to do certain work related activities such as "understand and remember very short and simple instructions."  Tr. 667.  He rendered these opinions in November 2012.  Tr. 668.

Similarly, Dr. Burnette responded to a questionnaire in September 2012 that Dellinger could lift ten pounds occasionally and less than ten pounds frequently, stand and walk for four hours in an eight-hour workday and for twenty minutes without interruption, sit for four hours in an eight-hour workday and for forty minutes without interruption, and occasionally climb, balance, stoop, kneel, crouch, and crawl.  Tr. 661–63.  She further opined in September 2013 that:  (1) Dellinger could only use her hands occasionally due to neuropathy in her hands and her SLAP tear; (2) Dellinger's chronic pain would cause interruptions in her concentration that would make it difficult for her to keep up with a production pace; and (3) Dellinger would have too many bad days to attend work regularly.  Tr. 723.

In his decision, the ALJ afforded "no weight" to Dr. Bridgeman's opinion, finding that, after giving the opinion "full consideration," it was not "adequately supported by acceptable clinical or laboratory findings or the other, substantial and credible evidence of record."  Tr. 26.  The ALJ detailed his reasons for discounting Dr. Bridgeman's opinion, noting that: (1) his opinion is inconsistent with the opinions of Dr. Burnette on Dellinger's RCF and is unsupported by the opinions of other treating sources of record; (2) "Dr. Bridgeman is a primary care physician, is not a specialist, and is not trained in

7

making disability determinations"; (3) his opinion is based in part on what Dellinger reported to him; (3) his "medical reports do not contain reference to any underlying condition which would reasonably be expected to cause [the opined] degree of limitation or to any sustained, clinical complaints or abnormalities of [the opined] level of severity," rather his reports "refer to conditions which have been relatively stable and controlled with conservative treatment"; and (4) his opinion on Dellinger's mental capacity is "inconsistent with the longitudinal history of treatment." Id.

The ALJ likewise afforded "little weight" to the opinion of Dr. Burnette, finding that it too was not "adequately supported by acceptable clinical or laboratory findings or the other, substantial and credible evidence of record." Tr. 27. Specifically, the ALJ found that Dr. Burnette's opinion was inconsistent with certain evidence in Dellinger's medical record as well as Dr. Burnette's own progress notes. Id.

The ALJ explained that he "relied heavily on the assessments of state agency medical consultants and mental consultants in assessing the residual functional capacity." Tr. 27. The state agency medical consultants opined that Dellinger was capable of light work with occasional climbing of ropes, ladders, and scaffolds, stooping, kneeling, crouching, and crawling. Tr. 104, 137. They further found that Dellinger should avoid concentrated exposure to hazards. Tr. 105, 138. The state agency psychologists opined that Dellinger had moderate restrictions in her ability to maintain attention and concentration for extended periods, concluding that she could perform simple tasks without special supervision. Tr. 90–91, 139–40. These opinions were based on medical records dating from September 12, 2011 to March 21, 2012. The ALJ found that these opinions were supported by the evidence in the record, including medical reports that

were issued after the state agency consultants rendered their opinions. Tr. 27. He detailed "some of the more salient findings" that supported the opinions of the state agency consultants:

> Ms. Dellinger's gait and station were grossly normal, she was raising a young child, nine years old at the time of the hearing, magnetic imaging of the lumbar spine failed to reveal an underlying condition to generate the pain she complained of, straight leg raise test was repeatedly noted to be normal, neurologic examinations were repeatedly and by different physicians reported to be negative, asthma was reported to be stable on many occasions, diabetes was reported on occasion to be without complication and neuropathy stable and musculoskeletal systems were reported normal.

Id.

### A.     Opinions of the State Agency Consultants

Dellinger first argues that the opinions of the state agency consultants here are based on an incomplete record and, therefore, the court cannot determine whether the ALJ's opinion is supported by substantial evidence. Pl.'s Objections 8. The Commissioner and the magistrate judge rely on Thacker v. Astrue, 2011 WL 7154218 (W.D.N.C. Nov. 28, 2011), to refute Dellinger's contention that a state agency consultant's reliance on an incomplete record requires remand. In Thacker, the court found that

> [t]he fact that the state agency physician did not have access to the entire evidentiary record—because the record was incomplete at the time of the assessment—is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination. (Tr. 18–20). Moreover, there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations beyond light work.

Thacker, 2011 WL 7154218, at *6, report and recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012).

9

Notably, this court and others in this district have held that a court cannot determine whether the ALJ's decision to afford great weight to the nonexamining state agency consultants was supported by substantial evidence when the state agency consultants did not have the benefit of subsequent medical records and opinions from treating and examining sources.  See Kirby v. Colvin, No. 4:13-cv-3138, 2015 WL 1038036, at *4 (D.S.C. March 10, 2015); Rogers v. Colvin, No. 0:12-cv-2210, 2014 WL 1330088, at *4 (D.S.C. Mar. 31, 2014) (finding that "because the nonexamining sources[] did not have the benefit of all the medical opinions prior to issuing their opinions, the court is unable to discern from the present record whether the ALJ's decision is supported by substantial evidence").  In Kirby, the ALJ granted great weight to the state agency consultants' opinions that the claimant's depression and anxiety would not prevent her from functioning in a work environment.  2015 WL 1038036, at *4.  These opinions were rendered without access to nearly three years of medical records in which four different examining sources opined that the claimant would not be able to function in a work environment.  Id.  This court found that, because the state agency consultants had not considered these significant examining source opinions and medical records that covered a span of three years, the court could not determine whether the ALJ's opinion was supported by substantial weight.  Id.

On the other hand, courts in this district have also found that an ALJ's decision may be supported by substantial evidence, even where he or she relied on a nonexamining source's opinion that was based on an incomplete record.  See McAbee v. Colvin, No. 6:13-cv-2331, 2014 WL 7369510, at *3 (D.S.C. Dec. 29, 2014); Putman v. Colvin, No. 6:13-cv-925, 2014 WL 3809492, at *15 (D.S.C. July 30, 2014) (finding that

10

an "ALJ may rely on a medical source opinion that did not have access to the entire medical record, so long as the ALJ accounts for any subsequent evidence, and substantial evidence supports the ALJ's decision"). In McAbee v. Colvin, the court considered the claimant's objection that the ALJ had improperly relied on a nonexamining source's opinion because the opinion was offered without the review of subsequent medical reports and evaluations. 2014 WL 7369510, at *3. The court noted that "one factor to consider in weighing the opinions of non-treating and non-examining experts is whether he has considered the full record." Id. The court ultimately found that the ALJ's decision was supported by substantial evidence, noting that the nonexamining source had reviewed the critical evidence in the record and that the records not reviewed were "largely duplicative and consistent with the records to which he had access." Id. The court also noted that the ALJ "carefully weighed" the opinions offered by the examining and nonexamining sources, and "provided detailed reasons for giving minimal weight to the opinions of [the treating source] and the 'greatest weight' to the opinions of [the nonexamining source]." Id.

      Here, the court finds that the fact that the state agency consultants based their opinions on an incomplete record does not deprive this court of the ability to determine whether the ALJ's decision is supported by substantial weight. Although there are admittedly some differences in the medical records and opinions that were not reviewed by the state agency consultants, these records and opinions are largely consistent with the records and opinions that the consultants were able to review. See McAbee, 2014 WL 7369510, at *3. For example, on May 31, 2013, Dr. Burnette noted in her progress notes that Dellinger was "alert, well oriented, and appears in some discomfort, but no acute

11

distress. . . . Gait and station appear grossly within normal limits with mild start-up pain." Tr. 699. The state agency consultant reviewed a progress note issued by Dr. Burnette on October 12, 2012, in which she noted that Dellinger was "alert, well oriented, neatly dressed and groomed, and in no acute distress. . . . Gait remains slightly antalgic with start-up pain." Tr. 131, 695. The state agency psychologist also reviewed and gave "great weight" to a medical opinion from Dr. Bridgeman dated October 17, 2011 in which he opined that Dellinger had a "serious" work-related limitation in function due to a mental condition. Tr. 136, 461.

In his thorough, twenty-one page decision, the ALJ provided detailed reasons for discounting the opinions of Dr. Bridgeman and Dr. Burnette, while affording greater weight to the opinions of the state agency consultants. After a careful review of the ALJ's decision and the evidence in the record, the court finds that the ALJ's decision to afford great weight to the opinions of the state agency consultants was supported by substantial evidence.[1]

Therefore, Dellinger's first objection fails.

**B.     Improper Practice of Medicine**

Dellinger next argues that the ALJ improperly exercised an expertise that he did not possess when evaluating the opinions of Dr. Bridgeman and Dr. Burnette. Pl.'s

---

[1] While the court recognizes that it reached a different conclusion in Kirby, the instant action presents key factual differences that provide support for finding that the ALJ's decision is supported by substantial evidence. For example, the nonexamining sources in Kirby had not reviewed nearly three years of medical records and opinions, whereas the nonexamining sources here only omitted about a year of medical records and opinions from their review. 2015 WL 1038036, at *4; Tr. 98–99, 103, 129–31, 136. In addition, the opinions and records in Dellinger's case were largely consistent with those to which the nonexamining sources had access. In Kirby, the omitted records contained progress notes and opinions that were largely inconsistent with the opinions and records to which the nonexamining sources had access. 2015 WL 1038036, at *4. For these reasons, the court finds that its holding in Kirby is inapposite.

12

Objections 3, 12. Specifically, she argues that the ALJ: (1) "impermissibly provided a speculative opinion regarding Dellinger's SLAP tear"; and (2) "improperly attempted to practice medicine by using scattered, marginally relevant or irrelevant findings to conclude that Dr. Bridgeman's opinion must be incorrect." Id. Dellinger relies on the Fourth Circuit case, Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984), to support her objection.

In Wilson, the ALJ decided that the examining physician's clinical findings did not support the physician's conclusions as to the claimant's functional limitations. 743 F.2d at 221. In drawing this conclusion, the court found that the ALJ substituted expertise that he did not possess in the field of orthopedic medicine for the opinion of an examining physician regarding the claimant's functional limitations. Id. After noting that the examining physician's opinion was uncontradicted and was supported by the findings of a treating physician, the court found that there was no substantial evidence to support the conclusion that the claimant's RFC "was any greater than that described" by the examining physician. Id.

Here, the ALJ provided detailed and thorough reasons for discounting the opinions of Dr. Burnette and Dr. Bridgeman. As for Dr. Burnette, the ALJ considered her opinion that Dellinger had chronic, widespread pain due to a "combination" of factors, including the SLAP tear in Dellinger's left shoulder. Tr. 26, 723. While the ALJ noted that it is "likely that any problems the claimant may be having at the time due to the SLAP tear in her shoulder will be amenable to proper care and treatment by an orthopedist," he went on to detail his other reasons for discounting Dr. Burnette's opinion. Tr. 27. For example, the ALJ noted that "Dr. Burnette's statement that these

functional limitations have been present since the time she was first seen is directly contradicted by the opinion in September 201[2] that she had no restrictions in reaching and handling at that time." Id. He also noted, among other things, that Dr. Burnette's recent progress reports referred "to conditions which have been relatively stable and controlled with treatment." Id. Thus, while the ALJ may have delved into an area beyond his expertise when discussing Dellinger's SLAP tear, the court finds that this was not the sole basis for his evaluation of Dr. Burnette's opinion. Rather, the ALJ provided numerous reasons why he decided to give "little weight" to Dr. Burnette's opinion, including the contradictory evidence in the medical record. Id.; cf. Gallman v. Colvin, No. 5:12-cv-2979, 2014 WL 658002, at *8 (D.S.C. Feb. 19, 2014) (finding that ALJ was not "free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject he is not qualified to render," and noting that the ALJ "offered little explanation" for his conclusions as to the expert's opinion and did not discuss any medical evidence that conflicted with the opinion). Accordingly, the court finds that the ALJ did not reach his conclusion based on his own opinions, but rather on the medical evidence in the record.

Similarly, when discussing Dr. Bridgeman's opinion, the ALJ cited specific evidence in the record that was inconsistent with his findings. Tr. 26. While Dellinger argues that the ALJ "ignored ample conflicting evidence in the record," the court finds that this is essentially an invitation to reweigh the evidence and come to its own conclusion as to the value of Dr. Bridegman's opinion. Such reweighing of the evidence is not within the province of this court. See Johnson v. Barnhart, 434 F.3d 650 at 653 (holding that a reviewing court should not undertake to reweigh conflicting evidence,

14

make credibility determinations, or substitute its judgment for that of the ALJ). As such, the Court declines to substitute its judgment for that of the ALJ.

Therefore, Dellinger's second objection fails.

### C.     Commissioner Guidelines

Dellinger next argues that the ALJ's decision to afford "no weight" to the opinion of Dr. Bridgeman violates the Commissioner's own ruling. Pl.'s Objections 13. Here, Dellinger refers to Social Security Ruling 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

This court has previously found that

> Social Security Ruling 96–2p only requires the ALJ's decision to contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and [the decision] must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Harris v. Astrue, No. 8:08-cv-1675, 2010 WL 1027822, at *10 (D.S.C. Mar. 17, 2010) (quoting Social Security Ruling 96-2p) (internal quotation marks omitted).

To support her argument, Dellinger relies on Farmer v. Astrue, No. 3:08-cv-0739, 2010 WL 500450, at *2 (D.S.C. Feb. 5, 2010), in which a court in this district considered a claimant's motion for attorney's fees. The court found that, in light of Social Security Ruling 96-2p, the Commissioner was not substantially justified in arguing that the ALJ

15

properly afforded a treating physician's opinion "no weight."  2010 WL 500450, at *2.  Dellinger also cites Cogdell v. Astrue, No. 8:10-cv-105, 2010 WL 6243317, at *8 (D.S.C. Dec. 20, 2010), in which the magistrate judge found that the ALJ improperly assigned "no weight" to the opinions of two treating physicians because the ALJ did not adequately explain how their opinions had no value.  The magistrate judge recommended that, on remand, the ALJ "clarify the reasons for any weight given to [the treating psychiatrists' opinions] and how those opinions, to whatever extent revalued, effect the RFC."  2010 WL 6243317, at *8.  When adopting the R&R, the district court agreed with the magistrate judge's conclusion that "the ALJ improperly rejected the opinions of these two physicians without an explanation."  2011 WL 1085120, at *3 (D.S.C. Mar. 22, 2011).

After careful review of Social Security Ruling 96-2p and the case law in this district, the court finds that the ALJ's decision to afford "no weight" to Dr. Bridgeman's opinion does not require remand.  Unlike in Codgell, the ALJ has offered reasons for discounting Dr. Bridgeman's opinion beyond the fact that there was contradictory evidence in the record.  Tr. 26.  In addition, the ALJ explicitly stated that he fully considered Dr. Bridgeman's opinion before deciding to afford it "no weight."  Id.  Moreover, the ALJ's RFC analysis appears to rely in part on findings made by Dr. Bridgeman in his progress notes.  Specifically, when discussing Dellinger's RFC, the ALJ stated that "Dr. Bridgeman reported lungs clear normal respiratory effort [sic], no lumbar tenderness, no weakness, no numbness, negative straight leg raise, no neurologic deficits, asthma stable, anxiety and depression stable, no shortness of breath, diabetes without complications, neuropathy stable, hypertension stable, and no change in bowel or

bladder habits." Id. Thus, the court finds that, under these facts, the ALJ complied with Social Security Ruling 96-2p because he gave "specific reasons for the weight given to the treating source's medical opinion," reasons that were "supported by the evidence in the case record." Harris, 2010 WL 1027822, at *10.

Therefore, Dellinger's third objection fails.

### D.     Remaining Objections

Dellinger's remaining objections are essentially invitations to the court to reweigh the evidence and come to its own conclusions as to the weight to afford the opinions of Dr. Bridgeman and Dr. Burnette. For example, Dellinger objects that "Dr. Burnette's opinions do not support the rejection of Dr. Bridgeman's opinions," and that "the ALJ impermissibly plucked fragmented pieces of the record to support his decision" to discount Dr. Burnette's opinion. Pl.'s Objections 3, 8. Because such reweighing of the evidence is not within the province of this court, remand is not appropriate on this basis. See Johnson v. Barnhart, 434 F.3d 650 at 653 (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). As previously stated, the ALJ provided detailed reasons for discounting the opinions of Dr. Bridgeman and Dr. Burnette. The Court declines to substitute its judgment for that of the ALJ as to these treating physicians' opinions.

Therefore, Dellinger's remaining objections fail.

## IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 26, 2015**
**Charleston, South Carolina**

18